IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:17-CV-262-FL

| | | |
|---|---|---|
| ANTONIO D. TONEY, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JONATHAN M. HILLIS, | ) | |
| | ) | |
| Defendant.[1] | ) | |
| | ) | |

This matter is before the court on defendant's motion for summary judgment (DE 28). Plaintiff filed a response in opposition, and the time for reply has passed. In this posture, the issues raised are ripe for resolution. For the following reasons, the motion is granted.

**STATEMENT OF THE CASE**

This action arises out of an alleged unlawful arrest and use of force against plaintiff by defendant police officer in the town of Spring Hope, North Carolina, on April 30, 2014. Plaintiff filed pro se a verified complaint in Nash County Superior Court on April 27, 2017, asserting violations of his Fourth Amendment rights against defendant and former defendant John Doe Cummings, an additional defendant involved in plaintiff's arrest. Plaintiff seeks compensatory and punitive damages; attorneys fees and costs; and trial by jury.

Defendant removed to this court on May 26, 2017, and filed an answer on June 6, 2017. The court entered case management order on July 27, 2017, as amended, setting discovery deadline to

---

[1] The court constructively has amended the caption of this order to reflect dismissal of former defendant John Doe Cummings ("Cummings") on May 31, 2018.

March 12, 2018, and dispositive motion deadline to April 6, 2018. The court denied on March 23, 2018, plaintiff's motion for continuance of the discovery schedule.

Defendant filed the instant motion for summary judgment on April 6, 2018. In support thereof, defendant relies upon a memorandum in support, a Local Civil Rule 56.1 statement of material facts, an appendix thereto, and the following declarations: 1) defendant's declaration, 2) former defendant Cummings's declaration, 3) and a declaration by Nash County deputy clerk of court, Bobbie Smith.[2]

On May 3, 2018, the court entered the following text order regarding the instant motion:

> TEXT ORDER - This matter comes now before the court of its own initiative, and where the undersigned is now aware the clerk's office inadvertently failed to send correspondence notifying pro se plaintiff of the deadlines associated with Rule 12 and pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975), the court has extended plaintiff's time to respond to . . . 28 motion for summary judgment, up to and until May 29, 2018.

That same date, the court sent plaintiff a letter notice of the right to respond to the instant motion. This letter notified plaintiff of the requirement for an "Opposing Statement of Facts," including the following information and warning:

> Under Local Civil Rule 56.1(a)(2) you **MUST** file a separate statement with numbered paragraphs responding to each paragraph in the defendant's statement of facts. Note that if you fail to respond to any numbered paragraph in the defendant's statement of facts, the facts in that paragraph will be deemed to be admitted.

(Roseboro Letter (DE 35) at 2) (emphasis in original).

On May 29, 2018, the deadline for response to summary judgment, plaintiff filed a notice of voluntary dismissal, followed by an amended notice of voluntary dismissal on May 30, 2018,

---

[2] On the same date, former defendant Cummings filed a motion to dismiss, which was terminated upon voluntary dismissal as described further in the text above. In addition, plaintiff filed a motion for entry of default on March 26, 2018, which the court denied on April 25, 2018.

which sought to voluntarily dismiss all claims in this action without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A). Upon the notice, the court dismissed former defendant Cummings, where he had filed neither any answer nor motion for summary judgment. With respect to defendant, however, the court noted that "plaintiff cannot voluntarily dismiss claims against [defendant] absent stipulation signed by all parties who have appeared." (Text order May 31, 2018). The court allowed plaintiff an extension to file response to the instant motion for summary judgment:

> In view of plaintiff's pro se status and apparent misunderstanding of the rules in this regard, the court grants plaintiff 14 additional days to respond to [defendant's] pending motion for summary judgment. If no response is received upon expiration of this very generous extension, the court will take up and decide the pending motion for summary judgment without plaintiff's response.

(Id.) (emphasis added).

Plaintiff did not file a timely response to the instant motion for summary judgment. Rather, plaintiff filed a response on June 21, 2018, relying upon a memorandum in opposition and the following attachments: 1) a lease agreement executed by plaintiff; 2) declarations by James Blackman ("Blackman"), Brenda Knight ("Knight"), Linwood Wheless ("Wheless"), individuals present at scene of arrest; 3) Shirley M. Toney, plaintiff's mother; 4) photographs of plaintiff; and 5) subpoenas issued by the district court of Nash County to defendant in 2015.

## STATEMENT OF FACTS

The undisputed facts are as follows. In the late evening hours of April 30, 2014, defendant, acting within the course of the scope of his employment as a police officer with the Spring Hope Police Department, encountered plaintiff with a group of people gathered on the sidewalk in front of an establishment known as "J's Place" in the town of Spring Hope, North Carolina. (Def's Local

3

Rule 56.1 Stmt. (DE 30) ¶ 2).[3] Defendant approached the group, advised that they were congregated in violation of Spring Hope Town Ordinance § 18-61,[4] and instructed the group to disperse. (Id. ¶ 3). Plaintiff refused to disperse and remained on the public sidewalk. (Id. ¶ 4).

Defendant thereafter radioed a fellow Spring Hope Police Officer for assistance. (Id. ¶ 5). After the other officer arrived, plaintiff continued to refuse to comply with requests, instructions and commands and was directed by defendant to submit to arrest. (Id. ¶ 6). Defendant attempted to grab plaintiff's hand for the purpose of handcuffing him. (Id. ¶ 7). Plaintiff ignored the officers and entered the J's Place establishment. (Id. ¶ 8). The officers followed Plaintiff who continued to ignore commands to submit to arrest and physically resisted attempts to effectuate arrest. (Id. ¶ 9). Plaintiff continued active resistance, and defendant utilized his taser in order to effectuate the arrest. (Id. ¶ 10).

Plaintiff was transported to the Spring Hope Police Department where he was examined and evaluated by emergency services technicians and released into the custody of defendant for transport to the magistrate's office. (Id. ¶ 11). Plaintiff was transported to the magistrate's office where probable cause was found and he was charged with violation of Spring Hope Town Ordinance § 18-61 and N.C. Gen. Stat. § 14-223. (Id. ¶ 12).[5]

---

[3] As provided in notice to plaintiff on May 3, 2018, pursuant to Local Civil Rule 56.1, each numbered paragraph in defendant's statement of material facts is "deemed admitted for purposes of the motion" where it is not "specifically controverted by a correspondingly numbered paragraph in [an] opposing statement." Local Civil Rule 56.1(a)(2).

[4] Spring Home Town Ordinance § 18-61 provides: "All persons are forbidden from assembling or standing so as to obstruct any sidewalk or street and all persons assembling and standing shall disperse and move upon the demand of any police officer." (Cummings Decl., Ex. A (DE 25-2)).

[5] North Carolina General Statute § 14-223 provides: "If any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a Class 2 misdemeanor."

# COURT'S DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.    Analysis

1.    Wrongful Arrest

Defendant argues that he is entitled to summary judgment on plaintiff's claim for wrongful arrest because there is no genuine issue of fact that the seizure in the instant case was supported by probable cause. In the alternative, he contends he is entitled to qualified immunity.

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. Amend. IV. An "arrest is a seizure of the person, and . . . the general rule is that 'Fourth Amendment seizures are 'reasonable' only if based on probable cause.'" Rogers v. Pendelton, 249 F.3d 279, 290 (4th Cir. 2001) (quoting Dunaway v. New York, 442 U.S. 200, 213 (1979)). Thus, to establish a Fourth Amendment claim based on unlawful arrest, plaintiff must show the arrest was not supported by probable cause. See Miller v. Prince George's Cnty., Md., 475 F.3d 621, 627 (4th Cir. 2007). "For probable cause to exist, there need only be enough evidence to warrant the belief

of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002).

Where a defendant police officer asserts a defense of qualified immunity, a two-step inquiry applies. "The first step is to determine whether the facts, taken in the light most favorable to the non-movant, establish that the officer violated a constitutional right." Yates v. Terry, 817 F.3d 877, 884 (4th Cir. 2016). If the facts establish the violation of a constitutional right, at the second step, courts determine whether that right was clearly established. Id. In this case, the facts taken in the light most favorable to the non-movant do not establish the violation of a constitutional right. Therefore the court need not reach the second step. See id.

Here, there is no genuine issue of fact that, at the time of arrest, there was "enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed." Brown, 278 F.3d at 367. Defendant encountered plaintiff with a group of people gathered on the sidewalk in front of "J's Place," advised that they were congregated in violation of Spring Hope Town Ordinance § 18-61, and instructed the group to disperse. (Def's Local Rule 56.1 Stmt. (DE 30) ¶¶ 2-3). When plaintiff refused to disperse and remained on the public sidewalk, (id. ¶ 4), defendant had at that time sufficient evidence that a violation of § 18-61 was taking place by virtue of plaintiff's continued presence on the sidewalk and failure to "move upon the demand of any police officer." Spring Home Town Ordinance § 18-61 (Cummings Decl., Ex. A (DE 25-2).

Thereafter, defendant had sufficient evidence also of a violation of N.C. Gen. Stat. § 14-223, due to plaintiff's resistance of arrest. After another officer arrived, plaintiff continued to refuse to comply with requests, instructions and commands and was directed by defendant to submit to arrest. (Id. ¶ 6). Defendant attempted to grab plaintiff's hand for the purpose of handcuffing him, but

7

plaintiff ignored the officers and entered J's Place. (Id. ¶¶ 7-8). When officers followed, plaintiff continued to ignore commands to submit to arrest and physically resisted attempts to effectuate arrest, to the point that defendant used a taser to effectuate arrest. (Id. ¶¶ 9-10). Thus, at multiple points in this process, there was ample evidence for a reasonable officer to find that defendant did "resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office." N.C. Gen. Stat. § 14-223.

Plaintiff suggests that there was no basis for defendant to arrest plaintiff because plaintiff merely was standing in front of his place of business. Section 18-61, however, does not exclude from its reach persons standing in front of their own business. Rather, it applies to "[a]ll persons . . . assembling or standing so as to obstruct any sidewalk." Spring Home Town Ordinance § 18-61 (Cummings Decl., Ex. A (DE 25-2)) (emphasis added). In addition, plaintiff violated the ordinance by failing to "move upon the demand of" a police officer, off of the sidewalk, regardless of his asserted status as a business owner. Id.

Plaintiff also suggests that he could not be in violation of N.C. Gen. Stat. § 14-223 because he was "legally resisting an unlawful arrest." (Compl. ¶ 40). However, once defendant had enough evidence to warrant the belief of a reasonable officer that a violation of Spring Home Town Ordinance § 18-61 was being committed, as set forth above, he had probable cause to effectuate an arrest. Plaintiff's resistance thereof, in repeated and continuing manner, thus in turn provided sufficient evidence to warrant the belief of a reasonable officer of a violation of N.C. Gen. Stat. § 14-223, in that plaintiff did "willfully and unlawfully resist, delay or obstruct a public officer."

Plaintiff cites Rivera v. Murphy, 979 F.2d 259, 264 (1st Cir. 1992), for the proposition that the existence of probable cause is "an issue for the jury." (Pl's Mem. at 5). As an initial matter,

Rivera does not state what plaintiff has placed in quotations. In any event, Rivera is inapposite because, there, "there [we]re no facts alleged" by the defendant "showing, or tending to show, that he had probable cause to arrest [the plaintiff]." Id. Here, by contrast, defendant did assert facts tending to show that he had probable cause to arrest plaintiff. (See Def's Local Rule 56.1 Stmt. (DE 30) ¶¶ 1-12).

Accordingly, plaintiff's claim for wrongful arrest fails as a matter of law, and summary judgment is granted to defendant on this claim.

2. Excessive Force

Defendant argues that he is entitled to summary judgment on plaintiff's claim for excessive force because there is no genuine issue of fact that the force used in this instance was reasonable and necessary to arrest plaintiff. In the alternative, he contends he is entitled to qualified immunity.

"[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396-97. "The court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection." Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996).

9

"Proper application [of the test of reasonableness] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. "Our precedent, . . . makes clear that tasers are proportional force only when deployed in response to a situation in which a reasonable officer would perceive some immediate danger that could be mitigated by using the taser." Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 903 (4th Cir. 2016).

Turning first to whether a constitutional violation took place, the undisputed facts of record establish that the use of a taser on plaintiff under the circumstances presented was reasonable. Plaintiff initially refused to disperse upon instruction of defendant, and he "continued to refuse to comply with requests, instructions and commands and was directed by defendant to submit to arrest." (Def's Local Rule 56.1 Stmt. (DE 30) ¶¶ 4-6). At that point, defendant "attempted to grab plaintiff's hand for the purpose of handcuffing him" but that attempt at arrest was unsuccessful, and plaintiff "ignored the officers and entered . . . J's Place." (Id. ¶¶ 7-8). When officers followed, "[p]laintiff . . . continued to ignore commands to submit to arrest and physically resisted attempts to effectuate arrest." (Id. ¶ 9). "Plaintiff continued active resistance." (Id. ¶ 10). At that point, defendant "utilized his taser in order to effectuate the arrest." (Id.).

These undisputed facts establish that, before defendant deployed his tazer, plaintiff had repeatedly committed an offense of resisting arrest, he evaded at least two less-severe forms of physical restraint, and he continued to ignore commands of officers to submit to arrest. Under the circumstances, this type of resistance to arrest posed a threat to the safety of the officers and others

on the scene. Adding to the severity of plaintiff's conduct, the resistance took place in "the late evening hours" in the vicinity of a "group of people gathered on the sidewalk." (Id. ¶ 2). It is also undisputed that when defendant entered J's Place to avoid arrest, it was crowded with people. (See, e.g., Cummings Decl. ¶ 14 ("approximately 30 customers"); Hillis Decl. ¶ 13 (same); cf. Knight Decl. ("15-20 people standing outside"). Although the crimes charged were misdemeanors, the resistance to arrest reasonably constituted a substantial risk to safety in the perspective of a police officer on the scene, given the setting and the repeated nature of plaintiff's resistive conduct. Therefore, all three Graham factors support the extent of force used under the circumstances. See Graham, 490 U.S. at 396.

In the alternative, defendant is entitled to qualified immunity on the issue of whether excessive force was used in this case. As noted above, "[q]ualified immunity shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." Armstrong, 810 F.3d at 907 (quotations omitted). "The dispositive question is whether the violative nature of particular conduct is clearly established." Id. (quotations omitted). Thus the court must first "define the precise right into which [it is] inquiring." Id. Then, the court determines "whether it was clearly established at the time [defendant] acted." Id.

"The constitutional right in question in the present case, defined with regard for [defendant's] particular . . . conduct, is [plaintiff's] right not to be subjected to tasing" while offering repeated evasive but non-violent resistance to a lawful seizure, after being commanded to submit to arrest, and in the context of an establishment crowded with people. Id. Such a constitutional right was not "clearly established" by case law prior to April 2014. The court is guided in this analysis by

11

contrasting this case with Armstrong and others in which the Fourth Circuit found a constitutional violation. Notably, in Armstrong, the Fourth Circuit found an excessive force violation with taser use under the following circumstances, but found that the defendant officer was entitled to qualified immunity:

> Armstrong was a mentally ill man being <u>seized for his own protection, was seated on the ground, was hugging a post to ensure his immobility, was surrounded by three police officers and two Hospital security guards,</u> and had failed to submit to a lawful seizure for only 30 seconds. A reasonable officer would have perceived <u>a static stalemate with few, if any, exigencies—not an immediate danger</u> . . . .

810 F.3d at 906 (emphasis added). In Yates v. Terry, 817 F.3d 877, 885 (4th Cir. 2016), the court found a constitutional violation and no qualified immunity where plaintiff was tased under the following circumstances:

> [plaintiff] <u>complied with [officer's] orders to place his hands on the car</u> before [officer] tased him for turning his head. After this taser application, [plaintiff] fell to the ground where he remained when [officer] <u>tased him a second time for no apparent reason</u>. Although [plaintiff] reached for his cell phone before being <u>tased a third time</u>, [plaintiff's] brother testified that "[t]he officer let [plaintiff] slide me the phone" and "knew [plaintiff] was giving me the phone to call [plaintiff's] commander because he let him do it.

Id. (emphasis added). This case does not present the same critical factors, as emphasized above, as found in Armstrong and Yates. In any event, because defendant's conduct took place prior to Armstrong and Yates, those cases cannot serve to demonstrate a clearly established right for purposes of qualified immunity here.

Additional earlier cases involving excessive force violations are instructively distinguishable on critical facts, such that a reasonable officer in defendant's position would not find his conduct in violation of clearly established case law. See, e.g., Park v. Shiflett, 250 F.3d 843, 848 (4th Cir. 2001) (finding violation where officer "twisted [female plaintiff's] arm behind her back, threw her

12

up against the building, and handcuffed her. He sprayed her twice in the eyes with Oleoresin Capsicum ('OC') spray from close range" in violation of department policy); Rowland v. Perry, 41 F.3d 167, 171-172 (4th Cir. 1994) (noting that after officer observed plaintiff pick up $5 dropped on the ground, plaintiff "was merely standing at the corner . . . when Officer [defendant] approached, and [plaintiff] never ran from or was chased by the officer. . . . [W]ithout any provocation, Officer [defendant] grabbed his collar and jerked him around, yelling harshly as he did so. Frightened, [plaintiff] instinctively tried to free himself. In response, Officer [defendant] punched him and threw him to the ground. Officer [defendant] then used a wrestling maneuver, throwing his weight against [plaintiff's] right leg and wrenching the knee until it cracked").

In his opposition to summary judgment, plaintiff offers only generalized argument in response to defendant's motion, and he does not point to specific genuine facts in dispute precluding summary judgment. Plaintiff's complaint and declarations filed with his response, however, suggest that officers did not give him sufficient warning or opportunity to submit to arrest prior to tasing. (See, e.g., Compl. ¶ 35; Knight Decl. (DE 39-1 at 3); Wheless Decl. (39-2 at 1)). This suggestion is not determinative to the court's summary judgment analysis, where it is undisputed that plaintiff had already resisted an attempted handcuffing and thereafter continued to "physically resist[] attempts to effectuate arrest," and continued "active resistance" while in J's Place. (Def's Local Rule 56.1 Stmt. (DE 30) ¶¶ 7-10). It is undisputed that officers gave "commands to submit to arrest," but plaintiff ignored them. (Id. ¶ 9). In addition, it is notable that one declarant reports he "moved out of the way" in response to officer's presentation of the taser. (Blackman Decl. (DE 39-1 at 2)). Thus, there is no genuine issue of material fact that officers gave sufficient warning and opportunity to submit to arrest prior to tasing.

13

Plaintiff's complaint also states that defendant kicked him in the head after tasering him. (Compl. ¶¶ 1, 37, 48.h.). Generally, "a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Again, however, plaintiff does not assert this fact anywhere in his memorandum in opposition to summary judgment, and defendant's statement of undisputed facts, now accepted as admitted, states only that defendant tased plaintiff and then plaintiff was transported to the police department. (See Pl's Mem. (DE 39) pp. 1-7; Def's Local Rule 56.1 Stmt. (DE 30) ¶¶ 9-11). See Local Civil Rule 56.1(a)(2) ("Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement."); see also Matsushita, 475 U.S. at 587 (stating that non-moving party must "come forward with specific facts showing that there is a genuine issue for trial"). In any event, the sole declaration submitted in opposition to summary judgment that alleges plaintiff was kicked does not identify the officer who kicked plaintiff. (See, e.g., Knight Decl. (DE 39-1 at 3). Former defendant Cummings specifically avers "I was the only officer with the ability to kick the Plaintiff since I was the one that secured him with handcuffs." (Cummings Decl. (DE 25-2) ¶ 28). Accordingly, plaintiff's statement in his complaint that defendant kicked him is not sufficient to create a genuine issue of fact for trial.

Moreover, even assuming a genuine issue of fact regarding officer warning and kicking, other undisputed facts and case law as set forth above are sufficient to entitle defendant to qualified immunity on the issue of excessive force, given plaintiff's extended resistance to arrest, disregard of officer commands, and crowded surroundings. In sum, plaintiff has not demonstrated a genuine

issue of material fact as to a constitutional violation of excessive force. In the alternative, defendant is entitled to qualified immunity. Thus, defendant's motion must be granted as to plaintiff's excessive force claim.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (DE 28) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 25th day of February, 2019.

LOUISE W. FLANAGAN
United States District Judge